# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

Patricia Wheeler )
10313 Serenade Court )
Clinton, MD 20735 )
 )
            **Plaintiff,** )
v. ) Case No. 1:10-cv-01441 (JDB)
 )
Georgetown University Hospital )
a/k/a MEDSTAR-Georgetown Medical )
Center, c/o Registered Agent )
CT Corporation System )
1015 15th St., NW, Ste. 1000 )
Washington, D.C. 20005 )
 )
            **Defendant.** )

## OPPOSITION TO MOTION TO DISMISS

NOW COMES Plaintiff, Patricia Wheeler in opposition to the Motion to Dismiss filed by Georgetown University Hospital a/k/a MEDSTAR and states for cause:

1. The defendant violated Fed.R.Civ.P. 7.1(m) by failing to seek the consent of the plaintiff to file the motion, as is evidenced by the absence of the certification required by the rule.

2. The defendant is aware that the plaintiff filed an EEOC complaint in that the EEOC contacted the defendant per the statute, giving it NOTICE and an opportunity to defend. Therefore representations by the defendant by counsel to the contrary fly dangerously close to the flames of Fed.R.Civ.P. 11 et seq.

3. The EEOC issued a right to sue letter to the plaintiff on September 22, 2010. See Ex. 1.

## Substantive Opposition

The courts have previously held that a district court has jurisdiction over a Title VII claim if a suit is filed before a right-to-sue letter has been issued, as long as such a letter is issued before trial.

In Zipes v. Trans World Airlines, 455 U.S. 385 (1982), the Supreme Court addressed whether Congress intended that the timely filing requirement of Title VII, 42 U.S.C. Sec. 2000e-5(e), operate as a statute of limitations as opposed to a jurisdictional prerequisite.

However, the Zipes Court did not address whether the prerequisite of receiving a right-to-sue letter should also be construed as a condition precedent. Subsequent to Zipes, though, every circuit presented with the issue has decided that the receipt of a right-to-sue letter prior to the filing of a Title VII action is not a jurisdictional prerequisite, but rather a precondition subject to equitable tolling and waiver. See Jones v. American State Bank, 857 F.2d 494, 499-500 (8th Cir.1988); Gooding v. Warner-Lambert Co., 744 F.2d 354, 358 (3d Cir.1984); Wrighten v. Metropolitan Hospitals, Inc., 726 F.2d 1346, 1351 (9th Cir.1984); Williams v. Washington Metropolitan Area Transit Auth., 721 F.2d 1412, 1418 n. 12 (D.C.Cir.1983); Liberles v. County of Cook, 709 F.2d 1122, 1125 (7th Cir.1983); Pinkard v. Pullman-Standard, 678 F.2d 1211 (5th Cir.1982) (per curiam), cert. denied, 459 U.S. 1105 (1983).

Therefore in this and the preponderance of other jurisdictions, the civil action was jurisdictional, and any objection is now moot given the receipt of the right to sue letter.

## There is no basis to dismiss

The defendant put forth several arguments as to why the court should dismiss the complaint, none of which arise to the level that would warrant dismissal

The First Amendment to the United States Constitution is a part of the Bill of Rights and as such codifies in law a fundamental right of American Citizenship which prohibits the making or **enforcement** of **any** law impeding, infringing, interfering with, or prohibiting the right to petition the government for redress of grievances.

Originally, the First Amendment only applied to the Congress. However, the Supreme Court subsequently held that the Due Process Clause of the Fourteenth Amendment, applicable to the States, and the Fifth Amendment, applicable to the Federal Government and District of Columbia, applied to the First Amendment. Therefore under current law, the right to petition the government extends to petitions to all three branches of government: the Congress, the executive, and the judiciary. See California Motor Transport Co. v. Trucking Unlimited, 404 U.S. 508 (1972).

The Supreme Court acknowledged this Constitutional guarantee and in pursuit thereof relaxed requirements for filing civil actions. See Fed.R.Civ.P. 8 et. seq. According to the Supreme Court, "redress of grievances" is to be construed broadly and includes not solely appeals by the public to the government for the redressing of a grievance in the traditional sense, but also to petitions on behalf of private interests seeking personal gain.

Title VII of the Civil Rights Act of 1964 provides, in relevant part, that "[i]t shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of

employment, because of such individual's race . . ." 78 Stat. 255, as amended, 42 U.S.C. §2000e-2(a)(1). The court held that "this not only covers "terms" and "conditions" in the narrow contractual sense, but 'evinces a congressional intent to strike at the entire spectrum of disparate treatment of men and women in employment.'"  See Oncale v. Sundowner Offshore Serv. 523 U.S. 75, 118 S.Ct. 998 (1998) citing Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 64, 106 S.Ct. 2399, 2404, 91 L.Ed.2d 49 (1986) (citations and internal quotation marks omitted).

"When the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993) (citations and internal quotation marks omitted).

Where a defendant seeks dismissal of a complaint for lack of specificity, or on procedural grounds the conduct is inapposite to the unambiguous mandate at Fed.R.Civ.P. 8, et seq., simplicity of pleading, Fed.R.Civ.P. 12(b) et seq. providing a compliant survives if there be any cause of action found in the four corners of the complaint, Fed.R.Civ.P. 15 et seq., which permits liberal amendments of the complaint.  A more appropriate remedy would be a request for a more definite statement.  However, the complaint in the current case fairly puts the defendant on Notice as to the allegations and it has clearly demonstrated a grasp of the issues from the reading of the memorandum supporting the motion to dismiss.

### The Law Demands that Nurse Wheeler be Made Whole

There is much discussion as to whether a trial judge has the discretion to act in an affirmative manner to "effect restitution, and or make the plaintiff whole.

At Hopkins v. Price Waterhouse, 920 F.2d 967 (C.A.D.C., 1990), the court explored the Legislative History of Title VII, and the remedial reach that is defined in Section 706(g) of the statute:

> If the court finds that the respondent has intentionally engaged in ... an unlawful employment practice ... the court may enjoin
> the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay . . . or any other equitable relief as the court deems appropriate.

Title 42 U.S.C. Sec. 2000e-5(g) (1988).

By its choice of such expansive statutory language, authorizing the courts to "order such affirmative action as may be appropriate," Congress made it very clear its intention that courts exercise broad discretion in crafting effective equitable remedies for employment discrimination. Hopkins, 920 F.2d at 976.

A section by section analysis of the 1972 amendments reveals that Congress revised section 706(g) to provide for a pro-active court that would craft appropriate remedies for persons suffering from discrimination. The record provides:

> The provisions of this subsection are intended to give the courts wide discretion exercising their equitable powers to fashion the most complete relief possible.... [T]he scope of relief . . . is intended to make the victims of unlawful discrimination whole . . . [and] so far as possible, [restore them] to a position where they would have been were it not for the unlawful discrimination.

118 CONG.REC 7188 (1972).

5

The Supreme Court found in this Congressional language "emphatic confirmation that federal courts are empowered to fashion such relief, as the particular circumstances of a case may require to effect restitution, making whole insofar as possible the victims of . . . discrimination in hiring." Frank v. Bowman Transp. Co., 424 U.S. 747 (1976) (footnote omitted); see also Albemarle Paper Co. v. Moody, 422 U.S. 405, 420-21 (1975) (finding that this history "strongly reaffirmed the 'make whole' purpose of Title VII").

As stated above, the case law suggests that section 706(g) is to be construed so as to authorize the courts to grant "make whole" relief to victims of unlawful discrimination. As the Court noted in Albemarle Paper:

> It is . . . the purpose of Title VII to make persons whole for injuries suffered on account of unlawful employment discrimination. This is shown by the very fact that Congress took care to arm the courts with full equitable powers. For it is the historic purpose of equity to "secur[e] complete justice," Brown v. Swann, 10 Pet. 497, 503 [9 L.Ed. 508] (1836); see also Porter v. Warner Holding Co., 328 U.S. 395, 397-398 (1946) "[W]here federally protected rights have been invaded, it has been the rule from the beginning that courts will be alert to adjust their remedies so as to grant the necessary relief." Bell v. Hood, 327 U.S. 678, 684 (1946). See also Lander v. Lujan, 888 F.2d 153, 156 (D.C. Cir. 1989) (emphasizing importance of flexible, complete relief, under Title VII). The Congressional intent was that the court, to the fullest extent possible, use the powers conveyed under Title VII to put a victim of discrimination in the position that she or he would have been in but for the unlawful discrimination.

The law requires that the court First: Identify the precise injury caused by the discrimination; and Second: Shape a remedy that will, as much as possible, erase that injury. See Albemarle Paper, 422 U.S. at 418 ("The general rule is, that when a wrong has been done, and the law gives a remedy, the compensation shall be equal

to the injury. The latter is the standard by which the former is to be measured.") (quoting Wicker v. Hoppock, 73 U.S. (6 Wall.) 94, 99, 18 L.Ed. 752 (1867).

In crafting a remedy, the Supreme Court has made it clear that a complete remedy "should be **denied only for reasons which**, if applied generally, would not frustrate the central statutory purposes of eradicating discrimination throughout the economy and making persons whole for injuries suffered through past discrimination."  See Albemarle Paper, at 421, (footnote omitted) (discussing back pay); see also International Bhd. of Teamsters v. United States, 431 U.S. 324, 365 (1977) (seniority relief).

In addition to those two pervading statutory purposes, the court noted that one of the specific congressional concerns animating the 1972 amendments to Title VII was the need to tear down discriminatory barriers in the top echelons of the job market that continued to prevent women and minorities from "ascend[ing] the higher rungs in professional and other life." See 118 CONG.REC. 3802 (1972) (remarks of Sen. Javits); see also *Bartholet, Application of Title VII to Jobs in High Places*, 95 HARV.L.REV. 945, 980-83 (1982).  The brief but detailed allegations at the complaint reveal that there remains much to do at Georgetown University Hospital.  And no matter how unpleasant it might be, the law demands that Ms. Wheeler be provided a remedy for the wrong done to her.

At Hopkins v. Price Waterhouse, 920 F.2d 967 (C.A.D.C., 1990), footnote 9, the court held "[w]e would directly subvert what Congress intended in the 1972 amendments if we were to hold that partnership could not be **awarded** to a person who was denied it because of unlawful discrimination." (bold added).

7

Clearly Congress invested the courts with unlimited equitable powers to provide victims of discrimination such as Nurse Wheeler the remedy needed to make her whole.

### Ignorance is No Excuse

There have been a myriad cases in which District Courts and Courts of Appeals have held employers liable on account of actual knowledge by the employer, or where the high-echelon officials of an employer organization, of sufficiently harassing action by subordinates, which the employer or its informed officers have done nothing to stop. See, e.g., Katz v. Dole, 709 F.2d 251, 256 (C.A.4 1983) (upholding employer liability because the "employer's supervisory personnel manifested unmistakable acquiescence in or approval of the harassment"); EEOC v. Hacienda Hotel, 881 F.2d 1504, 1516 (C.A.9 1989) (employer liable where hotel manager did not respond to complaints about supervisors' harassment); Hall v. Gus Constr. Co., 842 F.2d 1010, 1016 (C.A.8 1988) (holding employer liable for harassment by co-workers because supervisor knew of the harassment but did nothing).

In the instant case senior nurses at Georgetown knew of the harassing, disparate and discriminatory treatment of the plaintiff and did nothing to stop such conduct.  In fact much was done to communicate to her that management knew of the disparately favorable treatment of Caucasian Nurses as compared to African American Nurses, and that such was the policy and practice at Georgetown Hospital. In such instances, the combined knowledge and inaction may be seen as demonstrable negligence, or as the employer's adoption of the offending conduct and

its results, quite as if they had been authorized affirmatively as the employer's policy. Cf. Oncale v Sundowner Offshore Serv. Inc., 118 S.Ct. 998, 1001(1998) (victim reported his grounds for fearing rape to company's safety supervisor, who turned him away with no action on complaint).

At the memorandum filed in support of the motion to dismiss the defendant at page after page relies on the bad faith allegation that no EEO complaint was filed. Clearly EEOC has much to explain as to why the Right to Sue Letter sat on the Supervisor's desk from September 2, 2010 to September 22, 1010 and was only released after undersigned suggested that a hearing would be held wherein EEOC would be asked to show cause. However, for the defendant to represent that there was no such filing, that it had not been notified of such a complaint, and there was no Right to Sue letter is at best bad faith.

The United States Supreme Court spoke on the issue of "tangible employment action" at Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1999), and held:

> *A tangible employment action constitutes a significant change in employment status, such as . . . firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits. (emphasis added).*

The termination of Nurse Wheeler constituted **a tangible employment action.** Brown v. Chairman, 199 F.3d 446, 457 (D.C. Cir., 1999) citing Crady v. Liberty Nat. Bank & Trust Co. of Ind., 993 F.2d 132, 136 (C.A. 7 1993). The right to work in one's profession is fundamental to being an American. Ms. Wheeler was DENIED a fundamental right and can only be made whole by court action.

## Dismissal is not warranted

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). All reasonable inferences are drawn in favor of the non-moving party. Alston v. Parker, 363 F.3d 229, 233 (3d Cir. 2004).

> A court must ask whether the complaint 'contain[s] either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory.'" Bell Atlantic Corp., 550 U.S. at 562 (emphasis in original) (quoting Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1106 (7th Cir. 1984)). . . . Thus, "[t]o survive a motion to dismiss, a . . . plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'
>
> Victaulic Co. v. Tieman, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atlantic Corp.*, 550 Burke-Ventura v. Vitelco, et al. Civil No. 2006-141 Memorandum Opinion U.S. at 555).

## CONCLUSION

The plaintiff has given proper notice of the issues in dispute and therein has provided the defendant adequate information to form a basis of defense. Dismissal is inconsistent with the law in this jurisdiction.

Respectfully Submitted,

/s/
E. Scott Frison, Jr., Esq.,
Bar No. 478092
1629 K. Street, Ste,. 300
Washington, D.C. 20036
240-398-9283

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 22, 2010, the Plaintiff's Opposition to the motion to dismiss was served electronically and a copy were sent via email to the defendant at:

David C. Tobin, Esq.
Tobin, O'Connor & Ewing
5335 Wisconsin Ave., N.W.
Suite 700
Washington, D.C. 20015
dctobin@tobinoconnor.com

/s/
E. Scott Frison, Jr., Esq.,

**From:** JIMI HARRIS <JIMI.HARRIS@EEOC.GOV>
**To:** frisonlaw@aol.com
**Subject:** Notice of Right To Sue Letter
**Date:** Wed, Sep 22, 2010 3:37 pm

Attorney Frison,

 Re: Patricia Wheeler v. Georgetown University Hospital
   570-2010-00541

This is to inform you that your client's Notice of Right To Sue letter was initially received and processed on September 2, 2010. Due to our case backlog the Notice of Right to Sue was delayed and mailed to you and your client on September 22, 2010. We apologize for the delay in getting the NRTS out to you.

Sincerely,

Jim Harris
Federal Investigator
EEOC Washington Field Office



Ex. 1