## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **PATRICIA WHEELER**,<br><br>Plaintiff,<br><br>v.<br><br>**GEORGETOWN UNIVERSITY HOSPITAL**,<br><br>Defendant. | Civil Action No. 10-1441 (JEB) |

### MEMORANDUM OPINION AND ORDER

Plaintiff Patricia Wheeler is a black registered nurse formerly employed by Defendant Georgetown University Hospital. Her lawsuit alleges that Defendant discriminated against her because of her race and retaliated against her for complaining about various violations of the Nursing Code committed by her colleagues. Defendant has now filed a Motion to Dismiss, much of which the Court grants.[1]

**I.  Factual and Procedural Background**

Plaintiff worked as a nurse for Defendant between June 2009 and January 2010. Compl. at 1-2, ¶ 1. Over the course of her employment, Plaintiff observed and reported four purported

---

[1] In considering this Motion, the Court has reviewed Defendant's Motion to Dismiss, Plaintiff's Opposition thereto, Defendant's Reply, and Plaintiff's Supplemental Memorandum.

violations of the "Nurses Code," id., ¶ 2, a publication of the American Nurses Association, a professional organization representing nurses. See id., Exh. 1 (American Nurses Association, Code of Ethics for Nurses with Interpretive Statement). Plaintiff alleges that her supervisor failed to discipline the nurses involved because of their race (white) and that she instead "acted adversely towards" Plaintiff after these reports. Id., ¶ 2. Following these perceived retaliatory employment acts, Plaintiff filed an EEO complaint on January 7, 2010. Id., ¶ 4. She was terminated the next day. Id.

Plaintiff filed suit in the Superior Court of the District of Columbia on July 26, 2010, and Defendant removed the action to this Court in August 2010. Defendant then filed the instant Motion to Dismiss under Rule 12(b)(6).

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of an action where a complaint fails to "state a claim upon which relief can be granted." When the sufficiency of a complaint is challenged under Rule 12(b)(6), the factual allegations presented in it must be presumed true. Leatherman v. Tarrant Cty. Narcotics & Coordination Unit, 507 U.S. 163, 164 (1993). Although the notice pleading rules are "not meant to impose a great burden on a plaintiff," Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 347 (2005), and "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), "a complaint must contain sufficient factual matter, [if] accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (internal quotation omitted). Plaintiff must put forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged," id., and there must be "more than a sheer possibility that a defendant has acted unlawfully." Id.

A motion to dismiss under Rule 12(b)(6) must rely solely on matters within the pleadings, see FED. R. CIV. P. 12(d), which includes statements adopted by reference as well as copies of written instruments joined as exhibits. FED. R. CIV. P. 10(c).

**III.  Analysis**

A. Count I – Race Discrimination

Defendant seeks the dismissal of Count I on two grounds. It contends Plaintiff has neither exhausted her administrative remedies nor stated a claim upon which relief can be granted. The Court addresses each in turn.

Defendant first argues that this count cannot survive because Plaintiff had not received a right-to-sue notice before she initiated the instant case. Mot. at 5-7. While it may be true that Plaintiff had not properly exhausted her administrative remedies before filing her Complaint, this fault was resolved with the subsequent receipt of the right-to-sue notice on September 22, 2010, which she included in her Supplemental Memorandum. See Williams v. Wash. Metro. Area Transit Auth., 721 F.2d 1412, 1418 n.12 (D.C. Cir. 1983) ("Receipt of a right-to-sue notice during the pendency of the Title VII action cures the defect caused by the failure to receive a right-to-sue notice before filing a Title VII claim in federal court."); see also Holmes v. PHI Serv. Co., 437 F. Supp. 2d 110, 123 (D.D.C. 2006) ("[U]nder Williams, where a defendant moves to dismiss a plaintiff's Title VII action for failure to exhaust administrative remedies because the plaintiff did not receive a right-to-sue letter before filing suit, a court should not dismiss the claim if, after filing the complaint but before dismissal, the plaintiff receives a

corresponding right-to-sue letter from the EEOC."). This count, therefore, cannot be dismissed on exhaustion grounds.

Defendant's argument on the merits, however, meets with greater success. Plaintiff's discrimination claim is twofold: first, that she suffered disparate treatment throughout her employment on the basis of race, Compl., ¶¶ 5-6, and second, that she was terminated for the same reason. Id., ¶ 7. Defendant, in response, notes Plaintiff's failure "to provide any description of adverse employment actions [Defendant] administered, or the supposed harsher or less favorable treatment African-American nurses received from [Defendant's] management for failures similar to those of Caucasian nurses." Mot. at 7. Defendant's position on the general disparate treatment allegations is well founded.

Plaintiff alleges that "Clinical Manager Hollandsworth discriminated in work assignments, training support, and responded in a disparate manner to workplace infractions committed by African Americans as opposed to similar workplace infractions by Caucasian Nurses." Compl., ¶ 6. Yet there is nothing whatsoever in the Complaint regarding work assignments or training support. Furthermore, the detail about the workplace infractions has nothing to do with discrimination. More specifically, as to the first two incidents, Plaintiff claims that she and other nurses made reports, but there was no discipline of the offending white nurse. Id., ¶ 2(a), (b). There is, however, neither any mention of the race(s) of the other reporting nurses or any description of what adverse action was taken against Plaintiff for her report. Similarly, there is no mention of any specific adverse action for the reporting of the third incident. Id., ¶ 2(c). Plaintiff does not even allege she reported the fourth incident; instead, it was reported by the patient's mother. Id., ¶ 2(d). In sum, no adverse actions other than termination are ever mentioned.

The Complaint, moreover, contains no facts mentioning any workplace infractions committed by black nurses or how they were treated. Nor does Plaintiff allege, for example, that those who complained about black nurses or white nurses who complained about coworkers did so with impunity. Plaintiff's allegation of race discrimination in relation to these incidents, therefore, is pure speculation and "stops short of the line between possibility and plausibility." Twombly, 550 U.S. at 546. It is precisely these kinds of vague claims that the Supreme Court sought to bar in Iqbal. Plaintiff's discrimination claim is conclusory and thus is "not entitled to the assumption of truth." Iqbal, 129 S. Ct. at 1940. Though the pleading rules are liberal and "legal conclusions can provide the complaint's framework," these "must be supported by factual allegations," id., which Plaintiff has utterly failed to provide. Dismissal of this part of her discrimination claim is thus appropriate because "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." Iqbal, 129 S. Ct. at 1940.

Plaintiff also claims that she was terminated due to her race. Compl., ¶ 7. Unlike her vague claims about disparate treatment, this wrongful termination claim does survive because it asserts a particular and concrete harm that Plaintiff suffered specifically because of her race. Although the factual assertions underlying the allegation certainly seem thin, dismissal at this stage is premature, particularly where Plaintiff has not had the benefit of any discovery to bolster it. See McWay v. LaHood, 269 F.R.D. 35, 37-38 (D.D.C. 2010) ("[T]he D.C. Circuit has directed that because it is difficult for a plaintiff to establish proof of discrimination, the court should view [pre-discovery] summary-judgment motions . . . with special caution.") (citing Aka v. Wash. Hosp. Ctr., 116 F.3d 876, 879-80 (D.C. Cir. 1997), overturned on other grounds, 156 F.3d 1284 (D.C. Cir. 1998) (*en banc*)); see also Twombly, 555 U.S. at 589 ("[A]t the motion to

dismiss stage, a judge assumes that all the allegations in the complaint are true (even if doubtful in fact).") (internal quotation omitted). The Court, therefore, declines to grant Defendant's Motion to Dismiss what remains of Plaintiff's discrimination claim.

      B.  <u>Count II – Retaliation</u>

Plaintiff also maintains that Defendant improperly retaliated against her for reporting negligent acts by her coworkers and workplace race discrimination. Compl., ¶¶ 8-10. Once again, Plaintiff claims retaliation both in the context of vague "adverse actions," <u>id.</u>, ¶¶ 8-9, as well as termination. <u>Id.</u>, ¶ 10.

In her Complaint, Plaintiff superficially asserts that her supervisor "initiated several adverse actions against her in retaliation," <u>id.</u>, ¶ 8, but she does not ever explain what these actions were. The lack of specificity with which Plaintiff has pled this claim simply cannot meet the <u>Iqbal</u> standard set out above. Without knowing what these "adverse actions" were, moreover, the Court cannot say that they rose to the level of materially adverse employment actions mandated by the Supreme Court for recovery under a Title VII retaliation claim. See <u>Burlington N. and Santa Fe Ry. Co. v. White</u>, 548 U.S. 53, 68 (2006) (finding that Title VII is not meant to protect employees "from those petty slights or minor annoyances that often take place at work and that all employees experience"). Plaintiff's retaliation claim as to these putative "adverse actions" may not proceed.

Plaintiff also claims that she was terminated in retaliation for her EEO complaint. Compl., ¶ 10. Defendant responds that this claim should be dismissed because Plaintiff has failed to make out a *prima facie* case of retaliation. The Supreme Court has held, however, that at the motion to dismiss stage, a court cannot throw out a complaint simply for failing to plead the elements of a *prima facie* case. <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 510-11 (2002);

see also Twombly, 550 U.S. at 586 ("But it should go without saying in the wake of Swierkiewicz that a heightened production burden at the summary judgment stage does not translate into a heightened pleading burden at the complaint stage."). Greater particularity is not required in the Title VII context; instead, "ordinary rules for assessing the sufficiency of a complaint apply." Swierkiewicz, 534 U.S. at 511.

Plaintiff alleges that she was terminated by Defendant the day after she filed an Equal Employment Opportunity complaint. Termination is clearly a "materially adverse" action that would "dissuade[] a reasonable worker from making or supporting a charge of discrimination" to the EEOC. Burlington N., 548 U.S. at 57. The close temporal connection between the filing of Plaintiff's EEO complaint and her termination also supports her assertion of retaliation. See Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001) ("The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'"). Plaintiff's second count thus survives this Rule 12(b)(6) challenge as to her termination.

### C. Count III – Termination in Violation of Public Policy

Plaintiff's third claim is that her termination was in violation of public policy. She asserts that she was fired "because she complied with the Nurse's Code to report incidents adverse to patient's [*sic*] care." Compl., ¶ 11. Defendant responds that the Nursing Code cannot be considered a public policy that protects at-will employees from termination.

In the District of Columbia, "[i]t has long been settled . . . that an employer may discharge an at-will employee at any time and for any reason, or for no reason at all." Adams v. George W. Cochran & Co., Inc., 597 A.2d 28, 30 (D.C. 1991). The Adams Court recognized a

narrow "public policy" exception to this holding: "a discharged at-will employee may sue his or her former employer for wrongful discharge when the sole reason for the discharge is the employee's refusal to violate the law, as expressed in a statute or municipal regulation." Id. at 34. Plaintiff never alleges she was terminated for refusing to violate the law, only that following the Nursing Code led to her discharge.

There may be other public policy exceptions in the District of Columbia, but it would be inappropriate for this Court to expand the Adams exception as Plaintiff requests. See Mullaney v. Wilbur, 421 U.S. 684, 691 (1975) ("This Court . . . repeatedly has held that state courts are the ultimate expositors of state law."). In fact, the propriety of applying the public policy exception to the Nursing Code was an ancillary issue in Carl v. Children's Hosp., 702 A.2d 159 (D.C. 1997) (*en banc*). Seven of the ten judges on the case considered that issue in various concurring and dissenting opinions. Four of the seven found the Code would not support a public policy exception. See id. at 165 n. 9 (Terry, J., concurring) (citing New Jersey and Massachusetts cases so holding).

Plaintiff, in her Opposition, makes no argument that Count III should survive. This omission may be treated as a concession. See Bryant v. Pepco, 730 F. Supp. 2d 25, 29 (D.D.C. 2010) ("Under Local Rule 7(b), if a plaintiff does not respond in his Opposition to a claim made in a defendant's Motion to Dismiss it may be treated as conceded."); Cureton v. U.S. Marshal Serv., 322 F. Supp. 2d 23, 27 (D.D.C. 2004) ("When a plaintiff files a response to a motion to dismiss but fails to address certain arguments made by the defendant, the court may treat those arguments as conceded, even when the result is dismissal of the case.").

D. Count IV – Breach of Contract

Plaintiff's last claim is that Defendant breached an "implied control" (presumably an implied contract) with her when it terminated her employment. Compl., ¶ 15. Defendant responds that, as she was an at-will employee, no contract existed. Mot. at 12-14.

It is presumed that indefinite employment contracts are at will – *i.e.*, they are "terminable by either party at any time." Kauffman v. Int'l Bhd. of Teamsters, 950 A.2d 44, 47 (D.C. 2008) (citing Nickens v. Labor Agency of Metro. Wash., 600 A.2d 813, 816 (D.C.1991)); see also Carl, 702 A.2d at 163 ("The common law that the courts of the District of Columbia have developed over the years is that employment is at will unless a contract or a statute provides otherwise"); Pfeffer v. Ernst, 82 A.2d 763, 764 (D.C. 1951) (finding that employment contracts "being for no definite period are terminable at the will of either party with no ensuing liability on the part of either"). This presumption may be rebutted "only where the parties have stated clearly their intention to limit the employer's right to terminate." Strass v. Kaiser Found. Health Plan of Mid-Atlantic, 744 A.2d 1000, 1015 (D.C. 2000).

The only support Plaintiff presents in her Complaint for the premise that her contract with Defendant was not purely at will is that she "planned to work for Georgetown University Hospital for a 30 year career." Compl., ¶ 16. This is clearly not sufficient to survive a Rule 12(b)(6) motion since "[a]n employee's subjective belief that her employment is not terminable at will is not controlling." Simard v. Resolution Trust Corp., 639 A.2d 540, 553 (D.C. 1994).

Plaintiff, moreover, has also failed to respond to this part of Defendant's Motion, instead spending time discussing irrelevant issues such as restitution and ignorance of the law not being a defense. Such briefing, therefore, has also implicitly conceded that her Breach of Contact claim is indeed invalid.

**IV. Conclusion**

The Court, accordingly, ORDERS that:

1. Defendant's Motion is GRANTED IN PART and DENIED IN PART;

2. Counts I and II are DISMISSED except as to the allegation of termination;

3. Counts III and IV are DISMISSED; and

4. Defendant shall file its answer to the remaining claims on or before June 20, 2011.

      **SO ORDERED**.

                                              /s/ James E. Boasberg
                                              JAMES E. BOASBERG
                                              United States District Judge

Date: June 6, 2011